AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means     ☐ Original     ☐ Duplicate Original

CLERK'S OFFICE
A TRUE COPY
May 01, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>a black iPhone with a broken screen at MCSO, property number 24-001958-1; and a black iPhone with unknown model number at MCSO, property number 24-001958-2; | Case No. **24-M-385 (SCD)**<br>Matter No. 2023R00176 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the __Eastern__ District of __Wisconsin__
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before __5-15-24__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Honorable Stephen C. Dries__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __5-1-24. 11:05__                    *Judge's signature*

City and state: __Milwaukee, Wisconsin__                    Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                            *Printed name and title*

| **Return** |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                  _____
                                                               *Executing officer's signature*

                                                                     *Printed name and title*

# ATTACHMENT A
## Property to be Searched

- A black iPhone with a broken screen on Milwaukee County Sheriff's Office, property number 24-001958-1; hereinafter referred to as Device A

- A black iPhone with unknown model number on Milwaukee County Sheriff's Office, property number 24-001958-2; hereinafter referred to as Device B.

# ATTACHMENT B
**Particular Items to Be Seized**

1. 1. All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1) and 843, including but not limited to the following:

    a. Electronic drug or money ledgers, drug distribution or customer lists and related identifying information, drug supplier lists (including names, addresses, phone numbers, or any other identifying information); correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    b. Electronic telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

    c. Records, items and documents stored on the Devices reflecting travel for the purpose of participating in drug trafficking activities, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel from August 2012 to the present;

    d. Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, UPS, FedEx, and other mail service receipts and records, bank statements, checks, credit card records, safe deposit box records, records and receipts and rental agreements for storage facilities, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of

      controlled substances, or financial transactions related to the trafficking of controlled substances.

    e. Photographs, videotapes or other depictions of assets, co-conspirators, controlled substances, or other activities related to drug trafficking or money laundering.

    f. Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
May 01, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* a black iPhone with a broken screen at MCSO, property number 24-001958-1; and a black iPhone with unknown model number at MCSO, property number 24-001958-2; | Case No. **24-M-385 (SCD)** Matter No. 2023R00176 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Eastern    District of    Wisconsin    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843 | Distribution of controlled substances and use of a phone to facilitate drug trafficking) |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Jacob A. Dettmering, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   Telephone   *(specify reliable electronic means)*.

Date: 5-1-24

*Judge's signature*

City and state: Milwaukee, Wisconsin      Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices, more fully described below and in Attachment A—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

3. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and

probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4. The facts in this affidavit come from my personal observations, my training and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1), 843 (distribution of controlled substances and use of a phone to facilitate drug trafficking) have been committed and that evidence of those violations may be located at the location described in Attachment A.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is:

- A black iPhone with a broken screen on Milwaukee County Sheriff's Office, property number 24-001958-1; hereinafter referred to as Device A

- A black iPhone with unknown model number on Milwaukee County Sheriff's Office, property number 24-001958-2; hereinafter referred to as Device B.

## PROBABLE CAUSE

8. On October 24, 2023, Rasheed HARRIS was released on conditions in Case Number 21-CR-35 (EDWI). In December of 2023, HARRIS' conditions of release were amended (under seal) to include authorization that HARRIS was allowed to cooperate actively with law enforcement.

9. On April 27, 2024, in connection with HARRIS' active cooperation with law enforcement, he was provided with a recording device that he was directed to use to surreptitiously record conversations and activities with targets of the investigation on an alleged trip to obtain controlled substances. HARRIS was *not* directed or authorized by case agents to engage in any controlled buys or sales of controlled substances. Nonetheless, on April 29, 2024, HARRIS (perhaps inadvertently) recorded himself engaging in unauthorized sales of controlled substances to multiple drug customers.

10. During one of the sales of controlled substances that was captured on the recording device on April 29, 2024, the customer can be heard stating "Okay listen. Ill cut you a deal. You give me what you gave me for $40 and ill buy another one right now. You get a chance to drive out of here with 80 bucks in your hand." HARRIS responds "Naw, you owe me 60 already." The drug customer responds: "That's what I'm saying, but if you give me a break to buy it for 40, I'll buy another one for 40, that gives you a benefit of walking out of here with 80, I got it right here." HARRIS states: "Okay, but then you still owe me 40." Later on in the recorded conversation, the drug customer says,

3

"Well I wanna buy some from you, I don't wanna expect you to just give it to me. I'm not like that, I don't expect you to support my habit." Harris responds: "Yeah, I know but listen, when I sell my grams, I sell for 60."

11. Later in the conversation HARRIS says "Alright, I'm gonna give you half and half bro," this is while HARRIS is weighing up the drugs and bagging up. The drug customer responds: "Oh… come on," and HARRIS responds: "Hold on, check it out before you say something, I aint gonna cheat you, im gonna treat you." The drug customer then says: "I'm even gonna throw another 20 in there, I'll buy it, but this will be gone in ten minutes, dude. That shits good, I like it. You know what, there aint much fentanyl in it, that's why I like it. it has that nice Heroin feeling when I like it." HARRIS responds "Hell Yeah."

12. Later on April 29, 2024, after officers observed HARRIS, the passenger in a vehicle, engage in what appeared to be multiple mobile drug transactions, officers followed the vehicle and initiated a traffic stop based upon the license plate of the vehicle HARRIS was a passenger in not being valid. The driver of the vehicle eventually pulled over and rustling and "oh shit" was heard on the recording device that HARRIS still had on his person. A canine alerted on the vehicle; however, a search of the vehicle did not reveal any controlled substances. HARRIS was arrested based upon his participation in multiple drug deals and recovered from his person were Devices A and B.

13. On April 29, 2024, the drug customer in the above-referenced deal, D.F., was interviewed. D.F. stated that he knew HARRIS as "Tank," and would regularly buy

4

narcotics from HARRIS. D.F. stated that he purchased one gram of heroin and one gram of cocaine from HARRIS on April 29, 2024, at approximately 4:30 p.m. D.F. stated he utilized his cell phone, 414-406-5341, to communicate with HARRIS, which was corroborated by telephone toll records. D.F. stated he would communicate with HARRIS via text messages and voice calls. When HARRIS pulled up on April 29, 2024, he was the front seat passenger of a gray Jeep. D.F. stated he got in the vehicle and spoke to HARRIS and received his cocaine and heroin. D.F. stated he talked to HARRIS about cutting him a deal on the drugs. D.F. stated he met HARRIS at a gas station where HARRIS pulled up and asked him if he "liked to party", which he knew as "to use drugs". HARRIS gave him a sample and gave him HARRIS' phone number. Since then, D.F. has purchased cocaine and heroin from HARRIS, aka "Tank." D.F. believed that it was only a week or two that he had been buying drugs from HARRIS.

14. D.F. was played a small sampling of audio obtained during his drug transaction on April 29, 2024, with HARRIS, and he confirmed that it was him and HARRIS conducting a narcotics transaction. D.F. stated there was a female in the vehicle with HARRIS at the time of the deal.

15. Device A and B are currently in storage at the Milwaukee County Sheriff's Office, 821 W State St, Milwaukee, WI 53233. In my training and experience, I know that Device A and B, has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the Milwaukee County Sheriff's Office.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      g.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17.      Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.samsung.com, I know that the Devices have capabilities that allow it to serve as a

wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context,

8

be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. Based on all of the aforementioned information as well as my training and experience and the investigation to date, your affiant believes there is probable cause to search HARRIS' cell phones which may contain evidence of his violations of Title 21, United States Code, Sections 841(a)(1) and 843.